**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**



FILED

OCT 18 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**CAROLINE STOVER,**

**Plaintiff,**

**v.**

**Civil Action No. 4:21cv150**

**THE COLLEGE OF WILLIAM
AND MARY IN VIRGINIA, et al.**

**Defendants.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court are joint Motions to Dismiss ("Motions") filed by the College of

William and Mary in Virginia ("W & M"), W & M President Katherine R. Rowe ("President

Rowe"), former W & M Athletic Director Samantha K. Huge ("AD Huge"), former W & M

Head Women's Basketball Coach Edward Swanson ("Coach Swanson"), Assistant Women's

Basketball Coach Michelle Kurowski ("Coach Kurowski"), and W & M Assistant Athletic

Director for Business Affairs Nate Engelhardt ("AAD Engelhardt") (collectively, "Defendants").

Defs.' Mot. Dismiss, ECF No. 5 ("12(b)(1) Mot. Dismiss"); Defs.' Mot. Dismiss, ECF No. 7

("12(b)(6) Mot. Dismiss"). Defendants move to dismiss Caroline Stover's ("Plaintiff")

Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *Id.*;

Defs.' Mem. Supp. 12(b)(1) Mot. Dismiss, ECF No. 6 ("Defs.' Mem. Supp. 12(b)(1)"); Defs.'

Mem. Supp. 12(b)(6) Mot. Dismiss, ECF No. 8 ("Defs.' Mem. Supp. 12(b)(6)"). Having

1

reviewed the parties' filings in this case, the Court finds that this matter is now ripe for judicial determination. *See* Defs.' Mem. Supp. 12(b)(1); Defs.' Mem. Supp. 12(b)(6); Pl.'s Mem. in Opp'n to Defs.' 12(b)(1) Mot. Dismiss, ECF No. 12 ("Pl.'s 12(b)(1) Mem. Opp'n"); Pl.'s Mem. in Opp'n to Defs.' 12(b)(6) Mot. Dismiss, ECF No. 13 ("Pl.'s 12(b)(6) Mem. Opp'n"); Defs.' Reply to Pl.'s 12(b)(1) Mem. Opp'n, ECF No. 14 ("Defs.' 12(b)(1) Reply"); Defs.' Reply to Pl.'s 12(b)(6) Mem. Opp'n, ECF No. 15 ("Defs.' (12(b)(6) Reply"). Upon review, the Court finds that a hearing on these Motions is not necessary. Hr'g Request, ECF No. 16; *See* E.D. Va. Local Civ. R. 7(J). For the reasons stated herein, Defendants' 12(b)(1) Motion to Dismiss is **GRANTED** and Defendant's 12(b)(6) Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

## A.  FACTUAL AND RELEVANT PROCEDURAL HISTORY

On November 30, 2021, Plaintiff filed a Complaint against Defendants. Compl., ECF No. 1. Relevant to Defendants' Motions to Dismiss and stated in the light most favorable to Plaintiff, the following facts are drawn from the Complaint and attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

At the time this action was filed, Plaintiff Caroline Stover was a senior at Defendant College of William and Mary in Virginia ("W & M" or the "University"). Compl. at 2. W & M is a higher education institution that receives federal funding and is an agency of the Commonwealth of Virginia. *Id.* At all relevant times, the individual defendants in this action, including W& M President Rowe, AD Huge, Head Coach Swanson, Coach Kurowski, and AAD Engelhardt, were employed by W & M. *Id.*

Plaintiff attended the University on an athletic scholarship and was a member of the W & M women's basketball team from 2018-2022. *Id.* at 3. To remain on an athletic scholarship, Plaintiff was required to maintain a 2.5 grade point average ("GPA"). Defs.' Mem. Supp. 12(b)(6),

Ex. A at 11. Because Plaintiff was unable to meet the GPA requirement as a freshman, Coach Swanson directed her to live on campus as a sophomore to focus on her academic performance. Compl. at ¶ 10. In compliance, Plaintiff lived in a W & M dormitory and participated in the college meal plan but "regularly visited and spent time with her friends" at a nearby townhouse located off campus. *Id.* at ¶ 11.

The events relevant to this action occurred on Sunday, October 27, 2019. *Id.* at ¶ 9. "After becoming suspicious that Plaintiff was not complying with the on-campus requirement," at least one member of W & M's athletic staff drove by the off-campus townhouse to try to collect evidence of Plaintiff living off campus. Defs.' Mem. Supp. 12(b)(1) at 2. While parked in the townhouse driveway, Plaintiff alleges that she observed "a silver sedan driven by a man" that she did not recognize "driving slowly and repeatedly past the house." Compl. at ¶ 12. Plaintiff further alleges that the "driver then parked behind Plaintiff's [vehicle] and began either taking photographs or making a video of Plaintiff with his cell phone" before driving away. *Id.* Following these events, Plaintiff decided to leave the house and began to drive back to the W & M campus, "only to note that the silver sedan was following her vehicle." *Id.* at ¶ 13. Plaintiff alleges that the vehicle was occupied by a male driver and had a Florida State University license plate frame and W & M Faculty/Staff parking badge hanging from the rearview mirror. *Id.* at ¶ 14. Plaintiff did not get the license plate number of the car, and eventually the sedan stopped following Plaintiff and drove away. *Id.* In response to these events, Plaintiff texted one of her teammates that she was being "followed" and was "scared" before reporting the incident to the James City County Police Department. *Id.* at ¶ 13-14.

The next day, on Monday, October 28, 2019, Plaintiff identified the same silver sedan in a W & M parking lot next to the Athletic Center and learned that the car belonged to Defendant

3

AAD Engelhardt. *Id.* at ¶ 15. At that time, AAD Engelhardt was the boyfriend of Defendant Coach Kurowski, the W & M Assistant Women's Basketball Coach. *Id.* "Knowing that she had been followed by a member of W & M athletic department made [Plaintiff] more frightened and confused, and she mentioned the incident on the morning of October 28 to an athletic trainer employed by W & M." *Id.* Plaintiff's report of the incident was then shared with both an athletics department administrator and W & M's Office of Compliance and Equity. *Id.*

That same day Plaintiff met with Coach Swanson and a teammate about Plaintiff's visits to the off-campus townhouse. In the meeting, Coach Swanson admitted to personally observing and documenting Plaintiff's vehicle off campus during her visits to the town house. Coach Swanson also "threatened that if he were to see [Plaintiff's] car at the [town house] again, he would kick [Plaintiff]…off of the Women's Basketball Team" and revoke her athletic scholarship. *Id.* at ¶ 16. "Upon information and belief, in light of [Coach] Swanson's admission to [Plaintiff], [AAD] Engelhardt was asked or volunteered to surveil and document [Plaintiff]'s presence at the house of her friends on a Sunday afternoon in an effort to build a case that she was not complying with [Coach] Swanson's directive to live at the dormitory, and so that her basketball scholarship could be revoked." *Id.* at ¶ 17.

W & M's Office of Compliance and Equity initiated an investigation the next day, and conducted interviews with Plaintiff, Coach Swanson, Coach Kurowski and AAD Engelhardt. *Id.* at ¶¶ 18, 20. No members of the women's basketball team, including Plaintiff's teammate who participated in Plaintiff's October 28, 2019 meeting with Coach Swanson, were interviewed as a part of the investigation. *Id.* at ¶¶ 26. In the investigation, Coach Kurowski alleged that she, along with her boyfriend AAD Engelhardt, drove by the off-campus townhouse to check if Plaintiff was complying with Coach Swanson's directives to reside on-campus, upon suspicions that Plaintiff

was residing in the townhouse. *Id.* at ¶¶ 20, 24-25. Coach Kurowski also told the Office of Compliance and Equity that her decision to check on Plaintiff's whereabouts on October 27, 2019 was made on her own accord. Defs.' Mem. Supp. 12(b)(6) at 6.

Plaintiff claims that Coach Swanson enlisted the help of Coach Kurowski and AAD Engelhardt to stalk and harass Plaintiff based on suspicions that Plaintiff was living off campus in violation of Coach Swanson's directives. *Id.* ¶¶ 16-17. Plaintiff also alleges that W & M's investigation and subsequent report on the incident "scapegoat[ed]" Coach Kurowski for her role in checking on Plaintiff's off campus whereabouts. *Id.* at ¶ 31. Therefore, the University's punishment of only Coach Kurowski and not Coach Swanson or AAD Engelhardt shows discrimination against women students and staff members, and a deliberate indifference to Title IX violations of the rights of female employees. *Id.* at ¶¶ 29, 31. Additionally, Plaintiff claims that since her initial report and the subsequent W & M investigation Coach Swanson has retaliated against Plaintiff by directing her teammates to publicly "berate" Plaintiff as a group via Zoom, solely excluding Plaintiff from a committee of all upperclassmen members of the women's basketball team, and limiting her playing time. *Id.* at ¶¶ 37-38. Plaintiff also notes that AAD Engelhardt has continued to document Plaintiff's whereabouts through improper surveillance, demonstrating a continued pattern of stalking and harassment. *Id.* at ¶ 39.

Finally, Plaintiff claims that President Rowe and AD Huge have refused to hold Coach Swanson and AAD Engelhardt accountable for their retaliatory conduct and continued harassment of Plaintiff. *Id.* at ¶¶ 40-45. Specifically, Plaintiff claims that President Rowe demonstrated an "apparent lack of concern with the perpetuation and promotion of a false narrative by the Compliance Office in order to protect Coach Swanson in his abuse of students who are members of the women's basketball team." Plaintiff also claims that AD Huge refused to end Coach

Swanson's retaliation and exhibited a deliberate indifference to Plaintiff's rights and the rights of "other members of the women's basketball team to be afforded equal educational opportunity to their male counterparts in violation of Title IX." *Id.* at ¶¶ 41, 43.

Plaintiff alleges that as a result of these events she suffered aggravated anxiety and emotional harm that caused her to develop hives, bite her cheeks and tongue, and inhibited her ability to sleep and concentrate. Compl. at 17.

Plaintiff filed the instant action in the Eastern District of Virginia on November 30, 2021. Compl. Plaintiff asserts 5 total claims, constituting: two claims against Defendant W & M; one claim against Defendants Rowe, Huge, Swanson, Kurowski, and Engelhardt; and two claims against Defendants Swanson and Engelhardt. *Id.* at ¶¶ 46-78.

Specifically, Plaintiff asserts the two following claims against W & M:

| Claim 1. | Defendant W & M's Deliberate Indifference to Plaintiff's Sex-Based Harassment Violated Title IX of the Educational Amendments Act of 1972 (Compl. at ¶¶ 46-54); |
|---|---|
| Claim 2. | Defendant W & M's Retaliation by Withholding Protections Otherwise Conferred by Statute Violated Title IX of the Educational Amendments Act of 1972 (Compl. at ¶¶ 55-61). |

Plaintiff asserts one claim against Rowe, Huge, Swanson, Kurowski, and Engelhardt:

| Claim 3. | Defendants' Denial of Equal Protection and Due Process Violated 42 U.S.C. § 1983 (Compl. at ¶¶ 62-70). |
|---|---|

Plaintiff asserts two claims against Swanson and Engelhardt:

| Claim 4. | Defendants' Intentional Infliction of Emotional Distress Violated Common Law (Compl. at ¶¶ 71- 74); |
|---|---|
| Claim 5. | Defendants' Assault [on Plaintiff] Violated Common Law (Compl. at ¶¶ 75-78). |

Plaintiff prays for injunctive relief that requires W & M to "take effective steps to prevent discrimination and harassment on the basis of sex," "fully investigate conduct that may constitute

sex-based harassment and/or retaliation," "appropriately respond to all conduct that may constitute sex-based harassment," and "mitigate the effects of harassment . . . by eliminating any hostile environment." *Id.* at 17. Plaintiff also seeks compensatory and punitive damages, plus statutory interest, costs, and reasonable attorney fees for her injuries. *Id.*

On March 11, 2022, Defendants moved to dismiss Plaintiff's injunctive relief and official capacity claims, pursuant to Federal Rule of Civil Procedure 12(b)(1). 12(b)(1) Mot. Dismiss; Defs.' Mem. Supp. 12(b)(1). That same day, Defendants moved to dismiss Plaintiff's Complaint, in its entirety and with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). 12(b)(6) Mot. Dismiss; Defs.' Mem. Supp. 12(b)(6). Plaintiff responded on April 8, 2022, *see* Pl.'s 12(b)(1) Mem. Opp'n; Pl.'s 12(b)(6) Mem. Opp'n. Defendants replied on April 22, 2022 and requested a hearing. Defs.' 12(b)(1) Reply; Defs.' 12(b)(6) Reply; Hr'g Request, ECF No. 16.

### B. LEGAL STANDARD

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018). There are several constitutional justiciability doctrines that emanate from this constitutional provision. This includes the doctrines of standing, ripeness, and mootness, and a prohibition against district courts issuing advisory opinions. *See United States v. McClure*, 241 F. App'x 105, 107 (4th Cir. 2007).

The standard of review for a challenge to the Court's Article III jurisdiction may be raised under either Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 360 (E.D Va.), aff'd, 333 F. App'x 733 (4th Cir. 2009).

## C. DISCUSSION

**A. Subject Matter Jurisdiction**

The Court first considers its subject matter jurisdiction. When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 767, 768 (4th Cir. 1991). To determine whether subject-matter jurisdiction exists, a district court "may consider evidence outside the pleadings without converting the proceedings to one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (citation omitted); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (a court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic"); *see also* Fed. R. Civ. P. 10(c). If a court determines that it lacks jurisdiction over a matter, it must dismiss the action.

Defendants make two primary arguments regarding the Court's subject matter jurisdiction. First, Defendants argue that Plaintiff lacks standing to seek prospective injunctive relief. Defs.' Mem. Supp. 12(b)(1) at 6-9. Second, Defendants argue that Plaintiff's 28 U.S.C. § 1983 claim is barred by the Eleventh Amendment. *Id.* at 9-11. The Court examines both arguments, and the evidence in support thereof, below.

### i. Plaintiff lacks standing to seek injunctive relief

A plaintiff must establish standing to seek injunctive relief by satisfying the case or controversy requirement of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff has met the constitutional requirements for standing when: (1) the plaintiff has sustained an injury in fact; (2) the injury is traceable to the defendants' actions; and (3) the injury likely can

be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011) (citing *Lujan*, 504 U.S. at 560-61. The injury in fact must be "concrete, particularized, and immediately threatening." *Griffin v. Dep't of Labor Federal Credit Union*, 912 F.3d 649, 654. For a Section 1983 plaintiff, injunctive relief is unavailable "absent a showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); Raub *v. Campbell*, 785 F.3d 876, 886 (4th Cir. 2015) ("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury.") (internal citations omitted).

Defendants argue that Plaintiff lacks standing to seek prospective injunctive relief under either Title IX or 28 U.S.C. § 1983. Defs.' Mem. Supp. 12(b)(1) at 2; Defs.' 12(b)(1) Reply. First, Defendant argues that Plaintiff's deliberate indifference claim relies on the single instance of surveillance that occurred on October 27, 2019. Defs.' Mem. Supp. 12(b)(1) at 8. Second, Defendants argue that Plaintiff's retaliation and Section 1983 claims rely primarily on past conduct rather than any ongoing actions by Defendants. *Id.*

Plaintiff responds by alleging that she has considered enrolling in a W & M graduate school and discussed remaining on the team for an additional year with the remaining coaches following Coach Swanson's dismissal. Pl.'s 12(b)(1) Mem. Opp'n at 2. Because Plaintiff remains eligible to play another year of W & M women's basketball, Plaintiff argues that she "may need injunctive relief protection" to prevent ongoing sex-based discrimination and harassment against W & M women athletes. *Id.*

Assuming that Plaintiff's allegations are true, Plaintiff has failed to show any real or imminent threat of her suffering from similar wrongdoing in the future. Plaintiff alleges that W & M's athletic staff engaged in and was deliberately indifferent to a pattern of sex-based

9

harassment, discrimination, and retaliation against Plaintiff in violation of Title IX. These allegations are primarily based on Coach Swanson and AAD Engelhardt's alleged surveillance and subsequent retaliatory conduct following the W & M investigation into the events that occurred on October 27, 2019. Plaintiff alleges that she remains at risk of future harm because she is eligible to play another season of basketball as a graduate student. But this allegation is speculative at best without evidence that Plaintiff has applied to any W & M graduate schools. Even accepting the possibility of Plaintiff's graduate school enrollment as true, Plaintiff still cannot overcome the imminent harm hurdle required under Article III, particularly given Coach Swanson's dismissal. Without a sufficient likelihood that Plaintiff will be wronged again in a similar way, Plaintiff's allegations of future harm are neither imminent nor concrete and she does not have standing to seek injunctive relief under Title IX or 28 U.S.C. § 1983.

### ii. Plaintiff's Official Capacity Claims are Barred by the Eleventh Amendment

In the 12(b)(1) Motion to Dismiss, Defendants assert that the Eleventh Amendment bars Plaintiff's claim for damages under 42 U.S.C. § 1983 (Count III). Plaintiff concedes that Count III is against the individual Defendants in their official capacity. *See* Pl.'s 12(b)(1) Mem. Opp'n at 3.

Under the Eleventh Amendment, "an unconsenting State is immune from suit brought in federal court by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). State agencies and instrumentalities also receive Eleventh Amendment protections and may not be sued for injunctive or monetary relief. *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014); *Regents of Univ. of Cal. V. Doe*, 519 U.S. 425, 429 (1997). Additionally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from

a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, state officials are immune from damages suits in their official capacities. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996).

As a public institution of higher education, W & M is an instrumentality of the Commonwealth of Virginia and afforded Eleventh Amendment protections. Va. Code § 23.1-100; *see Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 791 (E.D. Va. 2003). The doctrine of sovereign immunity prevents Plaintiff from suing W & M for monetary relief. Similarly, because Defendants are employed by W & M, they are also entitled to Eleventh Amendment protection as state officials. As such, the Eleventh Amendment plainly bars Plaintiff from seeking damages against the individual defendants in their official capacities.

However, in certain cases involving a Fourteenth Amendment right, the Fourteenth Amendment abrogates the Eleventh Amendment immunity. *Bd. Of Trs. Of Univ. Ala. V. Garrett*, 531 US. 356, 363 (2001). For example, under the *Ex parte Young* exception, a plaintiff may avoid the Eleventh Amendment bar to suit if her official capacity claims properly allege ongoing violations of federal law and seeks relief that is properly characterized as prospective. *Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011); *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception only applies in cases where injunctive relief is sought to protect against unconstitutional actions by state officials. *Ex parte Young*, 209 U.S. at 123; *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004). To determine whether the *Ex parte Young* exception applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotation marks and citation omitted).  The *Ex parte Young* exception does not apply when the

alleged violations "occurred entirely in the past." *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999).

The Court has conducted a straightforward review of Plaintiff's Complaint and finds that the *Ex parte Young* exception does not apply to Plaintiff's Section 1983 claims for the reasons described in detail above. Although Plaintiff argues that the *Ex parte Young* exception applies because "the individual defendants continue to violate her rights to access [] educational programs under Title IX via retaliation" and properly seeks prospective relief, the Complaint only describes prior instances of harassment and retaliation that do not, as a matter of law, allege an ongoing violation of federal law. Pl.'s 12(b)(1) Mem. Opp'n. at 3. Because the official capacity claims rely on Defendants' conduct that "occurred entirely in the past" and is caveated by Plaintiff's enrollment in a graduate school at W & M, Plaintiff has failed to demonstrate how Defendants continue to violate any federal law. Without more, the Court finds that Plaintiff's official capacity claims do not fall within the *Ex parte Young* exception and are barred by the Eleventh Amendment. Accordingly, Plaintiff does not have standing to bring a damages claim under 28 U.S.C. § 1983 against W & M or the individual defendants in their official capacities.

\*       \*       \*

For the foregoing reasons, Defendants' 12(b)(1) Motion to Dismiss Counts I, II, and III is **GRANTED** insofar as they seek injunctive relief. Standing presents no issue for Plaintiff's damages claims under Title IX; however, Plaintiff's Title IX deliberate indifference claim must be dismissed for other reasons, as discussed below. Count III, which alleged a violation of 28 U.S.C. § 1983, is **DISMISSED** against the individual Defendants in their official capacities for lack of subject matter jurisdiction.

**B. Failure to State a Claim**

Pursuant to Rule 12(b)(6), Defendants move to dismiss each remaining count of the Complaint for failure to state a claim upon which relief can be granted. *See* Defs.' Mem. Supp. 12(b)(6). In determining whether each count is plausibly pled, the Court will assess whether the Complaint states sufficient facts in support of the underlying elements for each offense.

For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).[1] Courts will favorably construe Plaintiff's allegations and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d

---

[1] The parties dispute whether the Court may consider the January 21, 2020 report created by W & M's Office of Compliance and Equity ("Report") in deciding Defendant's 12(b)(6) Motion. The Report is attached as Exhibit A to Defendants' Memorandum in Support of Defendants' 12(b)(6) Motion to Dismiss. *See* Defs.' Mem. Supp. 12(b)(6), Ex. A at 2-7. In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), courts may consider "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Bala v. Commonwealth of Virginia Dept. of Conservation and Recreation*, 532 Fed. Appx. 332, 344 (4th Cir. 2013); *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). The Court notes that Plaintiff does not appear to contest the authenticity of the documents, although Plaintiff disputes the Report's general findings. Because Plaintiff explicitly referred to the Report and based some aspects of her Title IX claims on the alleged misrepresentations made in the Report, the Court will consider the Report in making its 12(b)(6) determination.

298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions ... without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

### i. Federal Question Jurisdiction

As an initial matter, a federal district court has federal question jurisdiction over an action pursuant to 28 U.S.C. §§ 1331, 1343. *See Davis v. Passman*, 442 U.S. 228, 228 (1979) (recognizing that 28 U.S.C. § 1331(a) "confer[s] original jurisdiction on federal district courts of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 and arises under the Federal Constitution"); *see also, Bell v. Hood*, 327 U.S. 678, 681–85 (1946). In claims arising out of federal law, the Court will apply federal law. In this case, the Court has federal question jurisdiction pursuant to 20 U.S.C. § 1681(a) (Title IX).

### ii. Title IX Claims

Pursuant to Rule 12(b)(6), Defendants argue that Plaintiff fails to state a Title IX claim upon which relief can be granted. Defs.' Mem. Supp. 12(b)(6) at 9-20. Title IX of the Educational Amendments of 1972 reads, in relevant part, that "[n]o person...shall, on the basis of sex, be excluded from participation in, be denied of benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

"Discrimination under Title IX includes coach-on-student sexual harassment that creates a hostile environment in a school sports program." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 694 (4th Cir. 2007) (citing *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75 (1992)). A federal funding recipient that violates Title IX is subject to a private damages action. 20 U.S.C. § 1681(a); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979).

The issue here is whether the well-plead allegations, taken as true, establish that W & M violated Title IX through its deliberate indifference to Plaintiff's sex-based harassment in Count I and retaliation in Count II. The Court examines both theories of Title IX liability, and the evidence in support thereof, below.

### a.   Count One - Deliberate Indifference to Plaintiff's Sex-Based Harassment

Defendants argue that Plaintiff's sex-based harassment claim should be dismissed for failure to plead sufficient facts to satisfy Title IX's deliberate indifference standard. Defs.' Mem. Supp. 12(b)(6) at 9-16. To establish a Title IX claim under a deliberate indifference theory, a plaintiff must show (1) that the educational institution receives federal funds, (2) the plaintiff was subjected to harassment based on her sex, (3) the harassment was sufficiently severe and pervasive to create a hostile environment in an educational program or activity, and (4) there is a basis to impute liability to the institution. *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). To impute liability, the institution's response to the alleged harassment must be "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Generally, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.*

Defendants do not dispute the sufficiency of the Complaint on the first element but argue that "the Complaint fails to sufficiently allege sex-based harassment, severe and pervasive

harassment that created a hostile environment in an educational program or activity, or deliberate indifference by W & M." Defs.' Mem. Supp. 12(b)(6) at 9. The Court disagrees with Defendant's position and finds that the Complaint sufficiently alleges severe and pervasive sex-based harassment in satisfaction of the second and third element by alleging that Plaintiff "was subjected to surveillance and harassment by an unknown male who turned out to be [AAD] Engelhardt" after he drove his car past Plaintiff several times while she visited a friend off campus and "took pictures to document her whereabouts." Pl.'s 12(b)(6) Mem. Opp'n at 10. However, Plaintiff's deliberate indifference claim fails as a matter of law on the fourth element, because the factual allegations do not demonstrate that W & M's response to Plaintiff's harassment was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

Although Plaintiff contests the outcome of W & M's Office of Compliance and Equity's investigation and the response of certain administrators to Plaintiff's report of harassment, there is no basis for the Court to find that W & M acted with deliberate indifference. Plaintiff's Complaint establishes that after Plaintiff reported the October 27, 2019 events, W & M immediately responded and initiated an investigation in a timely fashion. Compl. at 4-5. The Office of Compliance and Equity not only interviewed relevant staff, including several members of the athletic department and Plaintiff, to better understand the extent of Plaintiff's harassment, but also took steps to put an end to Plaintiff's harassment. For example, the Office of Compliance issued a warning that put Coach Swanson and Coach Kurowksi on notice that any future reports of similar conduct would be cause for termination, and AAD Engelhardt received verbal counseling from his immediate supervisor about the inappropriateness of his actions. Defs.' Mem. Supp. 12(b)(6), Ex. A at 8. AAD Engelhardt was also warned that future reports of

16

similar behavior would provide cause for more serious disciplinary measures, such as termination. *Id.* Although the Office of Compliance found that Coach Swanson and Coach Kurowski's conduct did not violate any of W & M's current written, institutional, or Human Resources Department policies, the Office noted that department wide policies should be developed for athletic coaches to impose guidance on what behaviors are expected outside of normal athletic related activities. *Id.* Finally, the Office of Compliance and Equity instructed W & M's athletic department to consider how to address and proactively manage the relationship between Plaintiff and her coaches to ensure that Plaintiff felt safe following the incident. *Id.*

Plaintiff argues that her allegations establish deliberate indifference because "W & M's Compliance Office had actual knowledge that [Coach] Kurowski lied when she said she was in the car with [AAD] Engelhardt" but "this impeachment of [Coach] Kurowski's veracity was not mentioned in the Compliance Office Report." Pl.'s 12(b)(6) Mem. Opp'n at 12. Plaintiff also notes that the "W&M Report made no mention that [Coach] Swanson had admitted to surveilling [Plaintiff], directed others to follow her, having 'documented' proof of her traveling off campus, and threatened to remove [Plaintiff] from the basketball team and revoke her scholarship. Nor did the Report list each of the ways in which Swanson humiliated [Plaintiff] in retaliation for reporting his behavior to the Compliance Office." *Id.* at 12-13. Finally, Plaintiff argues that by failing to condemn or guarantee that Coach Swanson would stop his retaliatory conduct towards Plaintiff, AD Huge acted with deliberate indifference to Plaintiff's harassment. *Id.* at 13.

The Court finds that these facts sufficiently allege a severe and hostile educational environment that supports the third element of the deliberate indifference standard. But Plaintiff's disagreement with W & M's decision not to discipline Coach Swanson and AAD Engelhardt in the manner she desired is an inadequate basis for imputing liability on W & M. In

contrast, the Court finds that Plaintiff's Complaint establishes that W & M's response was "reasonably calculated to end the harassment." *Feminist Majority Found.*, 911 F.3d at 689 (citation omitted). Plaintiff has not reported any additional harassing activities from Coach Swanson or AAD Engelhardt since October 27, 2019, which suggests that W & M's response was effective in protecting Plaintiff from the complained of conduct. The Court will not second-guess W & M's disciplinary decision and does not find that W & M was deliberately indifferent in its response to Plaintiff's harassment claim. Therefore, Count I fails to state a claim for which relief may be granted.

Accordingly, Defendants' 12(b)(6) Motion to dismiss Count I is **GRANTED.**

**b.      Count Two – Retaliation**

Plaintiff also claims that Coach Swanson retaliated against her in violation of Title IX. Title IX prohibits retaliation against a person for complaints of sex-based discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005). A plaintiff stating a Title IX retaliation claim must sufficiently allege that: (1) she engaged in protected activity under Title IX and (2) as a result of their protected activity, she suffered an adverse action that is attributable to the defendant educational institution. *Feminist Majority Found.*, 911 F.3d at 694. To be actionable, the retaliatory conduct must be materially adverse such that it "dissuade[s] a reasonable [person] from making or supporting a charge of discrimination." *Id.* (citations omitted).

Defendant argues that Plaintiff's claim fails to plausibly allege retaliation because the Complaint describes a report of "general misconduct" and that misconduct – namely allegations that Plaintiff "was left off an upperclassmen committee, that AAD Engelhardt sent emails to his supervisor when he saw her around town, that Coach Swanson berated her at practice for a

18

purported lack of enthusiasm, and that she has played five minutes of game time since October 2019" – does not rise to the level of a materially adverse action. Defs.' Mem. Supp. 12(b)(6) at 18; Compl. ¶¶ 37-39, 45, 56. Plaintiff argues that she has satisfied the elements for a retaliation claim because her complaint to the Office of Compliance and Equity was protected activity that caused her to suffer a materially adverse action. Pl.'s 12(b)(6) Mem. Opp'n at 14. Furthermore, the alleged retaliatory conduct that occurred over the course of her basketball career, such as threats to remove her from the Women's Basketball team and revoke her scholarship, were sufficient to dissuade a reasonable person from reporting Coach Swanson's retaliation to W & M. *Id.* at 13-14.

At the pleading stage, the Court is unable to conclude that Coach Swanson's conduct was not retaliatory. Plaintiff's complaint to the Office of Compliance and Equity is clearly protected activity. Taken as true, Plaintiff's allegations regarding Coach Swanson's impact on her college basketball experience following her initial complaint are enough to sufficiently allege a plausible retaliation claim against W & M.

*       *       *

For the foregoing reasons, Defendants' 12(b)(6) Motion to Dismiss Count I is **GRANTED.** Defendants' 12(b)(6) Motion to Dismiss Count II is **DENIED,** and Plaintiff may continue to seek damages for the alleged retaliation.[2]

---

[2] Courts are split on whether punitive damages are available in a private Title IX action. It is unclear whether Plaintiff also seeks punitive damages under Title IX, but insofar as she does, such damages are not allowed. Title IX is modeled after Title VI of the Civil Rights Act of 1964 and interpreted and applied in the same manner. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002). Recipients of federal funding under Title VI "have not, merely by accepting funds, implicitly consented to liability for punitive damages." *Id.* at 188. Therefore, punitive damages are also not available in private action brought to enforce Title IX. *Mercer v. Duke Univ.*, 50 Fed.Appx. 643, 644 (4th Cir. 2002). Accordingly, insofar as Plaintiff's complaint can be read to seek punitive

## C. Remaining State Law Claims

The Court reviews Plaintiff's state law claims to determine whether to exercise supplemental jurisdiction. A district court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), if the claims are "so related" to the claims invoking federal question jurisdiction-invoking claim "that they form part of the same case or controversy under Article III." *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998) ("supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy'") (citing to § 1367); *see also, Hales v. Winn–Dixie Stores, Inc.,* 500 F.2d 836, 848, n. 12 (4th Cir.1974) (stating that supplemental jurisdiction does not encompass claims when one count is "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count"); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966) (explaining that federal courts may exercise supplemental jurisdiction over additional state claims if they arose out of "a common nucleus of operative fact" and setting out the constitutional limits of federal supplemental jurisdiction).[3]

---

damages under Title IX, Defendants' Motion to Dismiss this part of Plaintiff's Complaint is **GRANTED.**

[3] Pursuant to 28 U.S.C.A. § 1367(c), the Court may decline to exercise supplemental jurisdiction if:

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Generally, however, state tort claims are not considered novel or complex. *See, e.g., Parker v. Scrap Metal Processors, Inc.,* 468 F.3d 733, 743 (11th Cir. 2006); *INX Intern. Ink Co. v. Delphi Energy & Engine Management Systems,* 943 F.Supp. 993, 997 (E.D. Wis. 1996) (holding that

In claims arising out of supplemental jurisdiction, district courts apply federal procedural

law and state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427

(1996); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 92 (1938) (Reed, J., concurring in part) ("[N]o

one doubts federal power over procedure."); *Guaranty Trust Co. v. York,* 326 U.S. 99, 109

(1945) ("when a federal court exercises diversity or pendent jurisdiction over state-law claims,

the outcome of the litigation should be the same, so far as legal rules determine the outcome of a

litigation, as it would be if tried in a State court"); *see also, Mason and Dixon Intermodal, Inc. v.

Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in

diversity, or hears claims based on supplemental jurisdiction, the court applies state substantive

law to the state law claims"); *Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir. 2011) ("A federal court

exercising supplemental jurisdiction must apply state substantive law to the claim").

The state law claims alleged in Plaintiff's Complaint arise from the same set of facts that

serve as the basis for the remaining federal law claim. Since the Court finds that Plaintiff asserts

a viable federal claim, as discussed *supra*, the Court has supplemental jurisdiction to consider the

remaining state law claims.

### a.  Count Four – Intentional Infliction of Emotional Distress

Plaintiff alleges an intentional infliction of emotional distress claim against Coach

Swanson and AAD Engelhardt in Count IV. To bring an intentional infliction of emotional

distress claim based on conduct that is unaccompanied by physical injury, a plaintiff must

establish that the wrongdoer's actions were: (1) intentional or reckless; (2) outrageous and

intolerable in a manner that offends generally accepted standards of decency and morality; and

---

negligence, nuisance, and property damage claims have been held as not raising novel or complex
issues of state law).

(3) causally connected to (4) severe emotional distress. *See Womack v. Eldridge*, 215 Va. 338,

342. The Virginia Supreme Court has instructed courts to determine "whether the defendant's

conduct may be reasonably regarded as so extreme and outrageous as to permit recovery. . .

Where reasonable men differ, it is for the jury. . . to determine whether. . . the conduct has been

sufficiently extreme and outrageous to result in liability." *Id.* at 342.

      The Complaint alleges that Coach Swanson and AAD Engelhardt intentionally arranged

to surveil and intimidate Plaintiff and engaged in retaliatory and threatening conduct that was

designed to cause Plaintiff to feel extreme emotional distress. Compl. at 16 ¶ 72-73. In support of

this contention, Plaintiff cites to her interactions with Coach Swanson where he pressured her to

quit W & M Women's Basketball team or revoke her scholarship, as well as AAD Engelhardt's

general conduct "at the behest of [Coach] Swanson and Kurowski." *Id.* Plaintiff also argues that

the "stalking incident alone is enough to satisfy the 'outrageous and intolerable' element." Pl.'s

12(b)(6) Mem. Opp'n at 18. Viewing these allegations in the light most favorable to Plaintiff, the

Court finds that reasonable men may differ as to whether Coach Swanson and AAD Engelhardt's

conduct was sufficiently extreme and outrageous to result in liability. Therefore, this

determination is an issue for a jury.

      Accordingly, Defendants' 12(b)(6) Motion to Dismiss Count IV is **DENIED**.

**b.  Count Five – Assault**

      Plaintiff also brings an assault claim against Coach Swanson and AAD Engelhardt in

Count V. To prove assault, a plaintiff must establish that the defendant "performed 'an act

intended to cause either harmful or offensive contact with another person or apprehension of

such contact, and that creates in the other person's mind a reasonable apprehension of an

imminent battery.' There is no requirement that the victim of such acts be physically touched."

*Etherton v. Doe*, 268 Va. 209, 213 (2004) (quoting *Koffman v. Garnett*, 265 Va. 12, 16-17 (2003).

In making her claim, Plaintiff alleges that AAD Engelhardt was directed by Coach Swanson to threaten Plaintiff by surveilling, following, and taking pictures and videos of Plaintiff off-campus and in her vehicle. Compl. at 16 ¶ 76-77. However, because the Complaint does not adequately allege that either Coach Swanson or AAD Engelhardt intended to cause harmful or offensive contact with Plaintiff, or apprehension of such contact, Plaintiff's fails to state an assault claim.

Accordingly, Defendants' 12(b)(6) Motion to Dismiss Count V is **GRANTED**.

### D. CONCLUSION

For the reasons set forth above, Defendants' 12(b)(1) Motion is **GRANTED,** and Defendants' 12(b)(6) Motion is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendants' 12(b)(1) Motion to Dismiss Plaintiff's injunctive relief claims against W & M and the individual defendants in their official capacities is **GRANTED**. Defendants' 12(b)(6) Motion to Dismiss Counts I (Title IX deliberate indifference), III (28 U.S.C. § 1983), and V (assault) is **GRANTED with prejudice**. Defendants' 12(b)(6) Motion to Dismiss Count II (Title IX retaliation) and IV (intentional infliction of emotional distress) is otherwise **DENIED**. The Court **DIRECTS** the Clerk to provide a copy of this Memorandum and Order to the parties.

**IT IS SO ORDERED.**

Newport News, Virginia
October 18, 2022

Raymond A. Jackson
**United States District Judge**

23